# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5869 | **DATE** | 10/3/2002 |
| **CASE TITLE** | Graney vs. Hartford Financial Services, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 10/10/2002 at 9:30 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** We deny Hartford's motion (Doc 16-1) for summary judgment. Ruling set for October 10, 2002 is stricken. Counsel to appear for status hearing on October 10, 2002 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | 2 number of notices | **Document Number** |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | OCT 0 4 2002 date docketed | 21 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | 10/3/2002 date mailed notice | |
| SCT | courtroom deputy's initials | Date/time received in central Clerk's Office | SCT mailing deputy initials |

TRICIA M. GRANEY, )
)
        Plaintiff, )
)
vs. ) 01 C 5869
)
HARTFORD FINANCIAL SERVICES, INC., )
)
        Defendant. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on Defendant Hartford-Financial Service, Inc.'s ("Hartford") motion for summary judgment. For the reasons set forth below we deny the motion.

### BACKGROUND

Plaintiff Tricia Graney is a former loan officer of Hartford. She was hired into Hartford's Skokie, Illinois office by one of Hartford's owners, Lyle Schulman, in early 1997. After a couple of months at Hartford, Amir Mouayed (another owner), began asking Ms. Graney in the presence of coworkers, or asking coworkers in Ms. Graney's

21

presence, questions about her sex life with coworkers and supervisors.[1] The questions routinely inquired whether or not she was she was sleeping with or providing oral sex to Mr. Schulman or other Hartford personnel. Mr. Mouayed asked Ms. Graney these questions approximately three or four times a week during her employment (roughly 360 times altogether). Ms. Graney acknowledges that Mr. Mouayed may have been joking around in his questioning, but she claims that she did not view it as joking around. Mr. Mouayed also made additional sexually related inquiries regarding Ms. Graney to other Hartford employees outside Ms. Graney's presence.

In March 1999, John Terrell, a coworker called Ms. Graney at her apartment around 1:00 A.M. from her building lobby. Mr. Terrell asked if he could come up and have sex with her. She said "no" and hung up. He called back shortly later, and she hung up on him a second time. These phone calls were the office joke the next day, and Mr. Mouayed asked if he could call Ms. Graney for sex at 1:00 A.M. the following morning. Ms. Graney asked that her home phone number be removed from the office list. She never again received calls from Mr. Terrell.

Also in March 1999, shortly after Ms. Graney was promoted to the wholesale division, she had a meeting with Steve Tindall regarding training for her new position.

---

[1] For purposes of this summary judgment motion, we must review the record in the light most favorable to Ms. Graney. Several of the background facts are only alleged facts.

At the meeting, Mr. Tindall told her: "Look, Honey, all you have to do is put on a cute skirt, flirt with the customers, and when the customers see what you look like, you will get the business. You don't have to worry." She did not respond to Mr. Tindall or tell him that his comments were inappropriate. Instead, she told Mr. Schulman that she wanted to quit because of the incident with Mr. Tindall. Mr. Schulman suggested that, instead of quitting, she should try working out of Hartford's Arizona office for the summer. By the time she returned to Skokie, Mr. Tindall would be transferred to Hartford's Schaumburg, Illinois office. Plaintiff accepted the offer.

On her first day in the Arizona office, Jeff Gilsdorf, her new supervisor, after mentioning that his wife was out of town, invited her to the Grand Canyon with him on Saturday. Ms. Graney declined the invitation with a non-verbal gesture. The following Tuesday, Mr. Gilsdorf called her into his office and told her that he was mad at her because he waited all day Saturday for her to call to go to the Grand Canyon.[2] Ms. Graney admits that she does not know the purpose (e.g., for sex or just to be friendly) of Mr. Gilsdorf's invite. Ms. Graney further admits that prior to that Tuesday meeting, she had already forgotten that he had invited her to the Grand Canyon less than a week prior. In July 1999, Ms. Graney brought some files home with her so she could work from home rather than the office. Mr. Gilsdorf originally condoned

---

[2] Presumably Mr Gilsdorf did not understand or notice Ms. Graney's gesture.

bringing home the files but later scolded and swore at her for taking home work files. Mr. Gilsdorf has an erratic personality and treats everyone in the Arizona office equally erratically. Ms. Graney, having received permission from the Skokie office, continued to work from home in Arizona. Mr. Gilsdorf continued to bother her by calling her to tell her that she is a "prima donna" and "high maintenance" and that nobody in the Arizona office likes working on her files. Mr. Gilsdorf ultimately fired her on August 5, 1999.

After she was fired, Mr. Schulman informed Ms. Graney that she was welcome to come work in the Skokie office. She returned to work at the Skokie office but eventually left. The record is unclear as to whether she quit or was fired again.

Ms. Graney never filed any written complaints with Hartford regarding any of the alleged incidents she endured. She did, however, complain orally to Mr. Schulman and on one occasion to Mr. Mouayed.

On July 31, 2001, Ms. Graney filed this action against Hartford. In her First Amended Complaint (the "Complaint"), she alleges three causes of action. Count I alleges sexual discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Count II alleges retaliation for complaining of sexual harassment in violation of Title VII. Count III alleges unlawful discriminatory practices in violation of the Illinois Human Rights Act.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). The burden then shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on issues on which the non-movant bears the burden of proof at trial. *Id.* The non-movant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence. *Id.* The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.,* 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). It is with these principles in mind that we address Hartford's motion for summary judgement.

## DISCUSSION

As an initial matter, the court reminds Ms. Graney that Local Rule 56.1(b)(3)(B) requires her to provide "a statement, consisting of *short* numbered paragraphs, of any additional facts that *require* the denial of summary judgment . . .." N.D. Ill. L.R. 56.1(b)(3)(B) (emphasis added). Several paragraphs in her Rule 56.1(b) statement are too long and contain multiple sentences and fact patterns. *See e.g.*, Rule 56.1(b) Statement ¶ 43(containing eight sentences). Additionally, in her statement, she includes several facts that are irrelevant and on which she does not rely upon in her argument. Local Rule 56.1 is designed to isolate the material facts and put them before the court in an orderly and concise manner. Parties should only put forth the material facts that support a ruling in their favor. The Court has discretion in deciding whether or not to strictly enforce this local rule. *See Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000) ("Given their importance, we have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment."). The Court, in its discretion, declines to strike any of Ms. Graney's Rule 56.1(b) statement.

I.  Hostile Environment Sex Discrimination

Ms. Graney's first cause of action alleges that Hartford discriminated against her on the basis of sex. Title VII prohibits employers from "discriminat[ing] against any

individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, *sex*, or national origin." 42 U.S.C. 2000e-2(a)(1). Although Ms. Graney fails to articulate a specific form of sex discrimination, we find that she alleges hostile environment sex discrimination. In *Meritor Savings Bank v. Vinson*, the Supreme Court recognized that "a claim for 'hostile environment' sex discrimination is actionable under Title VII." 477 U.S. 57, 73 (1986).

A claim for hostile environment sexual harassment has five elements: (1) plaintiff was a member of a protected class; (2) plaintiff was subjected to unwelcome verbal or physical conduct of a sexual nature; (3) the harassment was based on plaintiff's sex; (4) the harassment was sufficiently severe or pervasive to alter the conditions of each of their employment; and (5) the employer knew or should have known of the harassment and unreasonably failed to take appropriate corrective action. *See Luttrell v. O'Connor Chevrolet, Inc.*, 2002 WL 1263990, *3 (N.D. Ill. 2002) (citing *Crenshaw v. Delray Farms, Inc.*, 968 F. Supp. 1300, 1304 (N.D. Ill. 1997)). In establishing that alleged harassment was sufficiently severe or pervasive to alter the conditions of a plaintiff's employment, the plaintiff "must show that his or her work environment was both subjectively and objectively offensive; 'one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be

so.'" *Gentry v. Export Packaging Co.*, 238 F.3d 842, 850 (7th Cir. 2001) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)).

To be entitled to summary judgment on Count I, Hartford must prove only that one of the elements is lacking. Hartford argues that the fourth element is lacking. In other words, Hartford argues that even if all of Ms. Graney's allegations are accepted as true, the harassment was not sufficiently severe or pervasive so as to make her work environment subjectively and objectively offensive.

Ms. Graney alleges that Mr. Mouayed asked her sexually offensive questions three or four times per week during her employment in the Skokie office, approximately 360 times in all. The questions inquired as to whether she was sleeping with or providing oral sex to Mr. Schulman or other personnel. The questions frequently were asked in the presence of Mr. Schulman or other personnel. Such questions typically followed occasions when Ms. Graney performed well on the job, thus suggesting an ulterior reason for her perceived good job performance. Ms. Graney alleges that "it was like an office joke" that she and Mr. Schulman were sleeping together. Mr. Mouayed also told her she looked sexy roughly twenty times. She never once asked Mr. Mouayed to stop making any of these remarks, but she did complain to Mr. Schulman about Mr. Mouayed's remarks. Furthermore, after the entire office learned of Mr. Terrell's failed early morning call to Ms. Graney, Mr. Mouayed asked

Ms. Graney if he could call her the following night and then laughed. She told him that it wasn't funny and that she was scared.

In the face of these extensive facts, we find that a reasonable jury could find the alleged harassment severe or pervasive enough to alter the conditions of Ms. Graney's employment. We also find that a reasonable jury could find her work environment was both subjectively and objectively offensive. Although it seems odd that Ms. Graney would tolerate such behavior for so long if she truly was offended by it, she does allege that she was offended by it and that she did complain about it several times.

In support of its motion, Hartford relies on several cases that held particular sets of facts insufficient to show severe and pervasive harassment. *See, e.g., Weiss v. Coca-Cola Bottling Co.*, 990 F.2d 333 (7th Cir. 1993); *Baskerville v. Culligan International. Co.*, 50 F.3d 428 (7th Cir. 1995); *Adusumilli v. City of Chicago*, 164 F.3d 353 (7th Cir. 1998). None of these cases, however, dealt with alleged behavior as persistent as Mr. Mouayed's behavior. Mr. Mouayed suggested roughly 360 times that Ms. Graney was sleeping with or providing oral sex to fellow coworkers; commented on Ms. Graney's sexy appearance roughly twenty times; and once asked her if he could call her in the middle of the night to come over for sex. In *Faragher*, the Supreme Court noted that "simple teasing" is not actionable sexual harassment. 524 U.S. at 778. Mr. Mouayed's

extensive alleged sexually related remarks concerning Ms. Graney cannot be written off on summary judgment as simple teasing.

II. Retaliation

Although Hartford requests summary judgment on plaintiff's entire Complaint, it fails to address her retaliation claim. Accordingly, the motion with respect to Count II is denied.

III. Illinois Human Rights Act

Hartford's entire argument with respect to its motion for summary judgment on the alleged violation of the Illinois Human Rights Act consists the following solo paragraph:

> Finally, Count III of plaintiff's complaint must also fail as the Illinois Human Rights Act defines sexual harassment as 'any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature when . . . such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive work environment.' 775 ILCS 5/2-101.[3] Plaintiff has not been the subject of sexual conduct interfering with her work performance, nor can she demonstrate a hostile work environment.

Hartford's Summary Judgment Motion at 7. The motion with respect to Count III is denied.

---

[3] Chapter 775, and not chapter 68 (which Ms Graney cites), is the proper chapter of Illinois' compiled statutes dealing with Human Rights. Additionally, the Complaint lazily fails to cite the actual section that provides her cause of action. Instead, the Complaint cites an outdated chapter consisting of several articles that in turn consist of several sections through which we had to sort. *See* Complaint ¶ 1 ("Illinois human Rights Act, Ill. rev. Stat. 1991, ch. 68 *et seq.*")

## CONCLUSION

Based on the foregoing analysis, we deny Hartford's motion for summary judgment.

_____
Charles P. Kocoras
Chief Judge
United States District Court

Dated: <u>October 3, 2002</u>